UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABDUL COULIBALY, Plaintiff | Civil Action No. |
| -vs- | **PLAINTIFF REQUESTS A TRIAL BY JURY** |
| US MEDICAL STAFFING, LLC; UPPER DARBY SCHOOL DISTRICT; JOHN PURCELL, individually; and WAYNE REMMEY, individually, Defendants. | **COMPLAINT** |

Plaintiff, ABDUL COULIBALY ("Plaintiff" and/or "Coulibaly"), by and through his undersigned counsel, hereby files this Civil Action Complaint against Defendants, US MEDICAL STAFFING, LLC ("Defendant" and/or "US Medical"), UPPER DARBY SCHOOL DISTRICT ("Defendant" and/or "UDSD"), JOHN PURCELL ("Purcell"), individually, and WAYNE REMMEY ("Remmey"), individually (collectively referred to as "Defendants"), and upon information and belief, avers the following:

## NATURE OF THE CASE

Plaintiff complains of race discrimination, religious discrimination, hostile work environment, disparate treatment, retaliation, and constructive discharge pursuant to the Civil Rights Act of 1866, as codified, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA"), as codified, 43 P.S. § 951 et seq., and seeks damages to redress injuries Plaintiff suffered as a result of Defendants' discriminatory, harassing, and retaliatory conduct based upon his race and religion. Plaintiff alleges that Defendants, acting as joint employers,

subjected him to disparate treatment, a hostile work environment, and retaliation for reporting unlawful discrimination and requesting religious accommodation. Defendants' continued discriminatory and retaliatory conduct, coupled with their failure to adequately address Plaintiff's complaints, created intolerable working conditions that ultimately resulted in Plaintiff's constructive discharge.

## JURISDICTION AND VENUE

1. This action involves questions of federal law pursuant to Section 1981, and Title VII of the Civil Rights Act of 1964. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2. This Court has supplemental jurisdiction over the Pennsylvania causes of action brought under the PHRA pursuant to 28 U.S.C. § 1367, as all claims arise from the same nucleus of operative fact.

3. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as Plaintiff was employed by Defendants in Delaware County, within the Commonwealth of Pennsylvania, where the alleged discrimination, harassment, and retaliation occurred.

4. Around July 5, 2025, Plaintiff filed separate Charges of Discrimination against Defendants US MEDICAL STAFFING, LLC and UPPER DARBY SCHOOL DISTRICT with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination, religious discrimination, hostile work environment, disparate treatment, and retaliation, and requested that the EEOC dual-file the Charges with the Pennsylvania Human Relations Commission ("PHRC") pursuant to their work-sharing agreement.

5. Plaintiff's Charge of Discrimination against Defendant US MEDICAL STAFFING, LLC was assigned EEOC Charge No. 530-2025-07850, and his Charge of Discrimination against Defendant UPPER DARBY SCHOOL DISTRICT was assigned EEOC Charge No. 530-2025-07848.

6. On August 6, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights pertaining to his Charge of Discrimination against Defendant US MEDICAL STAFFING, LLC.

7. On August 17, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights pertaining to his Charge of Discrimination against Defendant UPPER DARBY SCHOOL DISTRICT.

8. Plaintiff has accordingly exhausted his administrative remedies pertaining to his claims arising under Title VII against both corporate and institutional Defendants.

9. More than one year has passed since Plaintiff dual-filed his Charges of Discrimination with the PHRC, and Plaintiff has accordingly satisfied the applicable administrative waiting period pertaining to his claims arising under the PHRA.

10. Plaintiff brings this Civil Action Complaint against Defendants arising from the same series of discriminatory, harassing, and retaliatory acts, including the alleged joint-employment relationship between Defendants US MEDICAL STAFFING, LLC and UPPER DARBY SCHOOL DISTRICT, which ultimately resulted in Plaintiff's constructive discharge.

## PARTIES

11. Plaintiff, ABDUL COULIBALY ("Plaintiff" and/or "Coulibaly"), is a Black/African American male of the Muslim faith and a resident of the County of Philadelphia within the Commonwealth of Pennsylvania.

12. Defendant US MEDICAL STAFFING, LLC ("Defendant" and/or "US Medical") is a foreign business entity organized under the laws of the State of Delaware, with its principal place of business located at 1420 Walnut Street, Suite 1350, Philadelphia, Pennsylvania 19102, and is authorized to conduct business within the Commonwealth of Pennsylvania.

13. Defendant UPPER DARBY SCHOOL DISTRICT ("Defendant" and/or "UDSD") is a public school district organized and existing under the laws of the Commonwealth of Pennsylvania, with its administrative offices located at 8201 Lansdowne Avenue, Upper Darby, Pennsylvania 19082.

14. At all times material, Defendant US Medical provided staffing services to Defendant UDSD, including assigning Plaintiff to work as a Personal Care Assistant ("PCA") at Beverly Hills Middle School, located within the Upper Darby School District in Delaware County, Pennsylvania.

15. At all times material, Defendants US Medical and UDSD exercised control over Plaintiff's employment, including his assignments, scheduling, working conditions, supervision, and placement, and acted as joint employers of Plaintiff within the meaning of applicable federal and state employment discrimination laws.

16. Defendant JOHN PURCELL ("Defendant" and/or "Purcell") is an adult individual who, at all times material, was employed by Defendant UDSD and exercised supervisory and/or administrative authority over Plaintiff, including authority concerning Plaintiff's daily assignments, working conditions, and performance expectations.

17. Defendant WAYNE REMMEY ("Defendant" and/or "Remmey") is an adult individual who, at all times material, was employed by Defendant UDSD as Principal of Beverly Hills

Middle School and exercised supervisory and administrative authority over Plaintiff, including responsibility for addressing Plaintiff's complaints of discrimination, harassment, and retaliation.

18. At all times material, Defendants Purcell and Remmey acted within the course and scope of their employment with Defendant UDSD and exercised authority over Plaintiff's working conditions, assignments, and complaints of unlawful discrimination and harassment.

19. At all times material, Defendants US Medical and UDSD employed the requisite number of employees to qualify as employers under Title VII and the PHRA.

## MATERIAL FACTS

20. Around November 6, 2024, Plaintiff ABDUL COULIBALY, a Black/African American male and practicing Muslim, began his employment with Defendants as a Personal Care Assistant ("PCA") through Defendant US Medical.

21. Defendant US Medical assigned Plaintiff to work at Beverly Hills Middle School, located at 1400 Garrot Road, Upper Darby, Pennsylvania 19082, within Defendant Upper Darby School District.

22. In his position, Plaintiff provided assistance and support to students with significant behavioral, developmental, and medical needs, including students with Individualized Education Plans ("IEPs"), seizure disorders, and physical disabilities.

23. Throughout his employment, Plaintiff performed his job responsibilities diligently, professionally, and to the best of his abilities.

24. At all times material, Defendants US Medical and UDSD exercised control over Plaintiff's employment, including his assignments, scheduling, placement, supervision, and working conditions, and operated as joint employers.

25. Plaintiff worked under the direction and supervision of Defendant JOHN PURCELL ("Purcell") and Defendant WAYNE REMMEY ("Remmey"), Principal of Beverly Hills Middle School.

26. Almost immediately following the commencement of his employment, Plaintiff observed that Black/African American and Muslim employees were subjected to disproportionately negative treatment in comparison to their white/Caucasian and non-Muslim counterparts.

27. Specifically, Defendant Purcell routinely spoke down to Plaintiff and other Black employees, refused to make eye contact with them, raised his voice in a demeaning and hostile manner, and displayed open hostility toward Black and Muslim staff members.

28. Defendant Purcell did not subject similarly situated white/Caucasian and non-Muslim employees to the same degree of hostility, disrespect, and scrutiny.

29. Plaintiff was repeatedly singled out, humiliated, and subjected to discriminatory treatment by Defendant Purcell, which interfered with his ability to perform his job responsibilities in a professional and respectful working environment.

30. Around February 2025, Plaintiff was directed to a classroom to await the arrival of a student who ultimately never appeared.

31. While Plaintiff was waiting in the classroom, Defendant Purcell abruptly approached Plaintiff, forcibly pulled a binder from his hands, and ordered him to leave the classroom without providing any legitimate explanation.

32. Defendant Purcell's conduct was unnecessarily aggressive, intimidating, and humiliating, and was consistent with his ongoing pattern of hostility toward Plaintiff.

33. Following this incident, Plaintiff was not provided with another student assignment and was left without work to perform.

34. After clocking out, Plaintiff attempted to use the designated staff restroom. However, Defendant Purcell confronted Plaintiff and instructed him that he was not permitted to use the adult staff restroom and must instead use the students' restroom.

35. Notably, school employees were not permitted to use student restrooms, making Defendant Purcell's instructions particularly inappropriate and humiliating.

36. Plaintiff reasonably believed that Defendant Purcell's refusal to permit him to use the staff restroom was motivated by racial animus, particularly in light of Purcell's disparate treatment of Black employees.

37. Defendant Purcell's actions further reinforced Plaintiff's belief that he was being treated as inferior to his white/Caucasian coworkers.

38. In addition to this degrading treatment, Defendant Purcell routinely assigned Plaintiff to work with students presenting the most severe behavioral challenges, including students who demonstrated aggressive, violent, and unpredictable conduct.

39. Conversely, similarly situated white/Caucasian and non-Muslim employees were assigned students with less demanding behavioral needs and were not subjected to the same disproportionately difficult assignments.

40. Plaintiff's assignments placed him in unnecessarily dangerous working conditions and exposed him to an increased risk of physical injury.

41. On one occasion, a student physically struck Plaintiff while he was performing his assigned duties.

42. Despite the seriousness of this incident, Defendant Purcell failed to appropriately escalate or report the assault to school administrators in accordance with established procedures, as Plaintiff understood them.

43. Plaintiff was consequently forced to report the incident directly to school administration and repeatedly seek appropriate intervention.

44. Plaintiff alleges that the handling of the incident resulted in an unreasonable delay in appropriate disciplinary action against the student.

45. When Plaintiff questioned Defendant Remmey regarding the lack of timely disciplinary action, Remmey dismissively responded, “What do you want to happen?”

46. Defendant Remmey's response further demonstrated to Plaintiff that his legitimate safety concerns were not being afforded the same consideration as those of his white/Caucasian coworkers.

47. On another occasion, Defendant Purcell attempted to induce a student to submit a formal complaint against Plaintiff after the student expressed personal frustration with Plaintiff.

48. Despite the student's subsequent acknowledgment that he had merely been upset and did not have a legitimate complaint, Defendant Purcell continued encouraging the student to submit a negative report concerning Plaintiff.

49. Plaintiff reasonably believed that Defendant Purcell was attempting to manufacture allegations of poor performance to undermine Plaintiff's professional reputation and justify adverse employment action against him.

50. In or around March 2025, Plaintiff was also accused of refusing to follow a student who repeatedly ran away from him.

51. Contrary to this accusation, Plaintiff attempted to supervise the student, but the student repeatedly ran in the opposite direction whenever Plaintiff approached him.

52. Plaintiff reported the student's conduct to Defendant Purcell, who instructed Plaintiff to physically run after the student.

53. Plaintiff explained that physically chasing the student presented safety and liability concerns and was inconsistent with the procedures he understood had been established for addressing students who left assigned areas without authorization.

54. Specifically, Plaintiff understood that staff were instructed to return to the classroom, notify the appropriate teacher, and permit security personnel to intervene when students engaged in such conduct.

55. Rather than permit Plaintiff to follow these procedures, Defendant Purcell insisted that Plaintiff physically pursue the student and subsequently characterized Plaintiff's actions as a refusal to perform his assigned responsibilities.

56. Plaintiff disputes this characterization and avers that he was attempting to comply with established safety procedures while protecting both himself and the student from unnecessary injury.

57. In addition to the racial discrimination and harassment, Plaintiff was subjected to discriminatory treatment because of his Muslim faith and religious practices.

58. In accordance with his sincerely held religious beliefs, Plaintiff occasionally wore traditional Muslim clothing while performing his employment duties.

59. On multiple occasions when Plaintiff wore traditional Muslim attire, Defendant Purcell sent Plaintiff home early, claiming that no students were available for assignment.

60. These representations were pretextual, as Plaintiff observed that students remained available for assignment and that non-Muslim employees continued receiving work.

61. Plaintiff and other Muslim employees observed non-Muslim coworkers receiving student assignments while Muslim employees were denied comparable work opportunities.

62. As a direct result of these actions, Plaintiff lost wages and employment opportunities on days when he was sent home without an assignment.

63. Defendant Purcell further interfered with Plaintiff's religious practices by informing Plaintiff and another Muslim employee that they were not permitted to pray during the workday.

64. Plaintiff's religious prayer ordinarily required approximately ten minutes and could have been accommodated without materially interfering with his assigned responsibilities.

65. Plaintiff requested an accommodation to permit him to observe his religious prayer obligations, including explaining that he and an assigned student practiced the Muslim faith and observed prayer at similar times.

66. Despite Plaintiff's efforts to communicate his religious needs, Defendants failed to provide him with an effective religious accommodation.

67. Plaintiff reasonably believed that Defendant Purcell's restrictions on religious prayer, together with the denial of assignments when Plaintiff wore Muslim attire, were motivated by discriminatory animus toward his religion.

68. Plaintiff repeatedly reported the ongoing discrimination, harassment, disparate treatment, and unsafe working conditions to Defendant Remmey.

69. Rather than promptly and effectively remedy the discriminatory conduct, Defendant Remmey minimized Plaintiff's complaints, offered excuses for Defendant Purcell's behavior, and treated the incidents as interpersonal disagreements.

70. Plaintiff's concerns were further reinforced by his observations that approximately nine of the twelve Black employees working in the same setting had departed during his assignment, which Plaintiff attributed to the harassment and mistreatment occurring in the workplace.

71. Around February 28, 2025, Plaintiff specifically requested a meeting with Defendant Remmey concerning Defendant Purcell's aggressive conduct, including the binder incident and the denial of access to the staff restroom.

72. On or around March 5, 2025, Defendant Remmey met with Plaintiff regarding these complaints and advised that he had reviewed the incidents with Defendant Purcell.

73. Despite Plaintiff's allegations of discriminatory and humiliating conduct, Defendant Remmey minimized the incidents and advised that he had reminded Purcell to be mindful of his tone.

74. Defendant Purcell's discriminatory treatment nevertheless continued, and Plaintiff remained subjected to hostility, unequal assignments, and heightened scrutiny.

75. On or around March 17, 2025, Plaintiff submitted a written complaint to Defendant UDSD formally reporting the racial and religious discrimination, harassment, and microaggressions he experienced.

76. Plaintiff's written complaint specifically identified Defendant Purcell's discriminatory conduct and placed Defendant UDSD on notice of Plaintiff's allegations of unlawful discrimination.

77. That same day, Plaintiff participated in a meeting with Defendant Remmey and other school administrators concerning his complaints.

78. Plaintiff alleges that Defendant Remmey continued minimizing the seriousness of Purcell's conduct and failed to provide an adequate resolution to Plaintiff's concerns.

79. On or around March 18, 2025, Plaintiff further escalated his complaints to Defendant US Medical, reporting the racial and religious discrimination, persistent microaggressions, unequal treatment, and unsafe working conditions occurring at Beverly Hills Middle School.

80. Plaintiff specifically informed Defendant US Medical of the mistreatment he was experiencing at the hands of school personnel and the failure of Defendant UDSD to adequately address his complaints.

81. Accordingly, both Defendant US Medical and Defendant UDSD were placed on notice of Plaintiff's allegations of unlawful discrimination and harassment.

82. Plaintiff's complaints constituted protected activity under Title VII, Section 1981, and the PHRA, insofar as those statutes apply to the respective claims.

83. Following Plaintiff's formal complaints, Defendants subjected Plaintiff to continued scrutiny, unequal assignments, and other adverse treatment.

84. Defendant Purcell continued interfering with Plaintiff's working conditions, including through the assignment process and his interactions with other employees.

85. Plaintiff alleges that Defendant Purcell instructed other employees to avoid interacting with him, thereby isolating Plaintiff from his coworkers and further contributing to the hostile working environment.

86. During the period following his formal complaints, Plaintiff was repeatedly sent home without student assignments, notwithstanding his availability and willingness to work.

87. Specifically, Plaintiff was sent home on approximately four of his final nine scheduled workdays, frequently after being assigned to students who were absent.

88. Plaintiff reasonably believed that these assignments and subsequent dismissals were deliberately orchestrated to deprive him of employment opportunities and wages in retaliation for his complaints of discrimination.

89. Around this time, Defendant UDSD initiated an investigation into Plaintiff's allegations pursuant to its internal discrimination reporting procedures.

90. However, Plaintiff alleges that Defendant Remmey failed to ensure his complaint was promptly and appropriately processed, requiring Plaintiff to follow up directly with District officials.

91. Around March 31, 2025, Defendant UDSD confirmed receipt of Plaintiff's complaint and scheduled a formal investigative interview for April 2, 2025.

92. On April 2, 2025, Plaintiff participated in the investigative interview and detailed numerous incidents of racial and religious discrimination, harassment, unequal treatment, and retaliation involving Defendants Purcell and Remmey.

93. Plaintiff also identified potential witnesses who had observed or experienced similar mistreatment but were reluctant to participate because of concerns regarding retaliation.

94. Despite the ongoing investigation, Plaintiff continued experiencing adverse treatment, including lost work opportunities, isolation from coworkers, and uncertainty concerning his employment assignments.

95. Plaintiff further alleges that Defendant US Medical failed to meaningfully intervene to protect him from the discriminatory and retaliatory conduct occurring at its client worksite.

96. Although Defendant US Medical exercised control over Plaintiff's placements, scheduling, and employment-related communications, it failed to adequately address Plaintiff's complaints or ensure that he could continue working in an environment free from unlawful discrimination and retaliation.

97. Defendant US Medical was aware of Plaintiff's complaints concerning his assignments, working conditions, and treatment by school personnel, yet Plaintiff alleges that it failed to provide meaningful corrective assistance.

98. Rather, Plaintiff alleges that Defendant US Medical subsequently initiated or discussed reassignment arrangements without obtaining his agreement to a specific transfer.

99. Plaintiff reasonably believed that Defendants were attempting to remove him from his existing assignment rather than adequately remedy the discriminatory and retaliatory conditions he had reported.

100. Defendant UDSD subsequently concluded its internal investigation and determined that Defendant Purcell had violated District policy concerning his treatment of Plaintiff.

101. Although the District acknowledged that Defendant Purcell had engaged in conduct violating its policy, it claimed that it did not substantiate Plaintiff's allegations of racial and religious discrimination.

102. Plaintiff disputes the adequacy and conclusions of that investigation and maintains that Defendants failed to fully address the discriminatory and retaliatory conduct he experienced.

103. Defendant UDSD's acknowledgment of Purcell’s conduct further demonstrates that Plaintiff's complaints concerning Defendant Purcell's mistreatment were not wholly unfounded.

104. Nevertheless, Plaintiff alleges that Defendants failed to implement sufficient corrective measures to remedy the hostile working environment or restore Plaintiff's employment opportunities.

105. As a result of Defendants' continued conduct, Plaintiff experienced increasingly intolerable working conditions, including ongoing harassment, discriminatory assignments, interference with religious practices, lost wages, and retaliation following his complaints.

106. Around April 11, 2025, Plaintiff informed Defendant US Medical that he could no longer continue his employment under the circumstances.

107. Although Defendants characterized Plaintiff's separation as a voluntary resignation, Plaintiff alleges that his departure was the foreseeable consequence of the discriminatory, harassing, and retaliatory working conditions to which he had been subjected.

108. Plaintiff was effectively forced to choose between continuing to endure the hostile working environment and relinquishing his employment.

109. Accordingly, Plaintiff alleges that Defendants' unlawful conduct created working conditions so intolerable that a reasonable employee in Plaintiff's position would have felt compelled to resign, thereby resulting in his constructive discharge.

110. Defendants' stated explanations for Plaintiff's adverse treatment, including alleged attendance issues, performance concerns, lack of student availability, and staffing needs, were pretextual and did not accurately reflect the circumstances surrounding Plaintiff's employment.

111. Plaintiff maintains that he performed his assigned responsibilities professionally, reported student behavioral and safety concerns appropriately, and sought assistance from management when necessary.

112. Plaintiff further alleges that similarly situated white/Caucasian and non-Muslim employees were not subjected to the same pattern of hostility, unfavorable assignments, religious restrictions, and loss of employment opportunities.

113. At all times material, Defendants knew or should have known of the discrimination and harassment occurring in Plaintiff's workplace through Plaintiff's repeated verbal and written complaints.

114. Despite this knowledge, Defendants failed to take sufficient corrective action to prevent the continued mistreatment of Plaintiff.

115. Defendants' conduct subjected Plaintiff to disparate treatment, a hostile work environment, and retaliation because of his race, religion, and opposition to unlawful employment practices.

116. As a direct and proximate result of Defendants' actions, Plaintiff suffered financial losses, including lost wages, lost employment opportunities, and other employment-related compensation.

117. Plaintiff further suffered emotional distress, humiliation, embarrassment, anxiety, inconvenience, and loss of enjoyment of life as a result of the discriminatory and retaliatory treatment.

118. Plaintiff has suffered and continues to suffer economic and non-economic damages arising from Defendants' unlawful conduct.

119. Plaintiff alleges that Defendants acted intentionally, knowingly, and with reckless disregard for his federally and state-protected rights.

120. The foregoing incidents represent examples of the discriminatory, harassing, and retaliatory conduct to which Plaintiff was subjected during his employment with Defendants.

**COUNT I**
**RACE DISCRIMINATION UNDER**
**42. U.S.C. § 1981**
*(As against Defendant US MEDICAL STAFFING, LLC)*

121. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as fully as if set forth at length herein.

122. The Civil Rights Act of 1866, as codified at 42 U.S.C. § 1981 ("Section 1981"), guarantees all persons the same right to make and enforce contracts as enjoyed by white

citizens, including the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

123. Plaintiff, a Black/African American male, is a member of a protected racial class and was entitled to the same employment and contractual rights and privileges afforded to similarly situated white/Caucasian employees.

124. Defendant US Medical, acting individually and as Plaintiff's alleged joint employer with Defendant UDSD, subjected Plaintiff to discriminatory terms and conditions of employment, including unequal assignments, lost employment opportunities, disparate treatment, and failure to adequately address racially discriminatory conduct occurring at Plaintiff's assigned worksite.

125. Defendant US Medical was aware of Plaintiff's complaints of racial discrimination and harassment but failed to take sufficient corrective action despite its alleged authority over Plaintiff's employment, assignments, and placement.

126. Plaintiff alleges that, but for his race, he would not have been subjected to the discriminatory interference with his employment and contractual rights described herein.

127. As a direct and proximate result of Defendant US Medical's unlawful discrimination, Plaintiff suffered economic losses, emotional distress, humiliation, and other damages.

128. Plaintiff makes claims for all damages and relief available to him under Section 1981.

**COUNT II**
**<u>RETALIATION UNDER</u>**
**<u>42 U.S.C. § 1981</u>**
*(As against Defendant US MEDICAL STAFFING, LLC)*

129. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as fully as if set forth at length herein.

130. Section 1981 prohibits retaliation against individuals who oppose racial discrimination affecting rights protected by the statute.

131. Plaintiff engaged in protected activity by repeatedly reporting racial discrimination, harassment, disparate treatment, and unequal working conditions to Defendants.

132. Defendant US Medical was aware of Plaintiff's protected complaints and nevertheless failed to adequately address the ongoing discrimination and retaliation occurring at Plaintiff's assigned worksite.

133. Following Plaintiff's complaints, Plaintiff experienced continued unequal treatment, lost employment opportunities, adverse assignment decisions, and working conditions that ultimately contributed to his constructive discharge.

134. Plaintiff alleges that Defendant US Medical retaliated against him because of his opposition to racial discrimination and interference with his contractual employment rights.

135. Defendant US Medical's retaliatory conduct caused Plaintiff to suffer economic losses, emotional distress, and other damages.

136. Plaintiff makes claims for all damages and relief available to him under Section 1981.

**COUNT III**
**HOSTILE WORK ENVIRONMENT**
**UNDER 42 U.S.C. § 1981**
*(As against Defendant US MEDICAL STAFFING, LLC)*

137. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as fully as if set forth at length herein.

138. Throughout his employment, Plaintiff was subjected to unwelcome racial harassment, intimidation, humiliation, unequal treatment, and discriminatory working conditions.

139. Plaintiff was repeatedly spoken to in a degrading manner, subjected to disproportionately difficult and dangerous assignments, denied equal workplace privileges, and treated less favorably than similarly situated white/Caucasian employees.

140. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an objectively hostile and abusive working environment.

141. Defendant US Medical knew or should have known of the racial harassment through Plaintiff's repeated complaints but failed to take adequate corrective measures within its authority.

142. Defendant US Medical's conduct and omissions deprived Plaintiff of the equal enjoyment of his contractual employment rights because of his race.

143. Plaintiff makes claims for all damages and relief available to him under Section 1981.

**COUNT IV**
**RACE DISCRIMINATION, RETALIATION, AND HOSTILE WORK ENVIRONMENT UNDER 42 U.S.C. §§ 1981**
*(As against Defendants UPPER DARBY SCHOOL DISTRICT, JOHN PURCELL, and WAYNE REMMEY)*

144. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as fully as if set forth at length herein.

145. Section 1981 guarantees Plaintiff equal rights concerning the making, performance, modification, and termination of contracts, including the benefits, privileges, terms, and conditions of his employment relationship.

146. At all times material, Defendants Purcell and Remmey were employed by Defendant UDSD and worked in connection with Plaintiff's workplace assignments, supervision, treatment, and complaints.

147. Defendant Purcell personally participated in discriminatory conduct toward Plaintiff, including unequal assignments, degrading treatment, restrictions concerning workplace privileges, and conduct contributing to a racially hostile working environment.

148. Defendant Remmey was personally involved in receiving and responding to Plaintiff's complaints and allegedly participated in or permitted the continuation of discriminatory treatment despite having knowledge of Plaintiff's allegations.

149. Plaintiff further engaged in protected activity by opposing racial discrimination and reporting the unequal treatment he experienced.

150. Following his complaints, Plaintiff alleges that he experienced continued harassment, adverse assignment decisions, lost work opportunities, and retaliatory treatment.

151. Plaintiff alleges that the discriminatory and retaliatory conduct interfered with his contractual employment rights and ultimately contributed to his constructive discharge.

152. As a direct and proximate result of the foregoing conduct, Plaintiff suffered economic losses, emotional distress, humiliation, and other damages.

153. Plaintiff makes claims for all damages and relief available under Sections 1981 against the respective Defendants, subject to the applicable limitations on municipal and individual liability.

**COUNT V**
**RACE AND RELIGIOUS DISCRIMINATION AND**
**HOSTILE WORK ENVIRONMENT UNDER THE PHRA**
*(As against Defendants US MEDICAL STAFFING, LLC*
*and UPPER DARBY SCHOOL DISTRICT)*

154. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as fully as if set forth at length herein.

155. The Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(a), prohibits covered employers from discriminating against individuals because of race, color, or religious creed with respect to compensation, tenure, terms, conditions, and privileges of employment.

156. Plaintiff is a Black/African American male and practicing Muslim who was qualified to perform the essential responsibilities of his position.

157. Defendants discriminated against Plaintiff on the basis of his race and religious creed by subjecting him to disparate treatment, unequal assignments, restrictions concerning religious practices, lost employment opportunities, and discriminatory working conditions.

158. Defendants further subjected Plaintiff to a hostile working environment through repeated discriminatory conduct, intimidation, harassment, and unequal treatment that materially affected the terms and conditions of his employment.

159. Defendants knew or should have known of Plaintiff's complaints but failed to take adequate corrective action to prevent the continued harassment and discriminatory treatment.

160. Defendants' conduct ultimately contributed to working conditions that Plaintiff alleges were so intolerable that he was compelled to resign.

161. Plaintiff makes claims for all damages and relief available to him under the PHRA.

**COUNT VI**
**<u>RETALIATION UNDER THE PHRA</u>**
*(As against Defendants US MEDICAL STAFFING, LLC and UPPER DARBY SCHOOL DISTRICT)*

162. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as fully as if set forth at length herein.

163. The PHRA, 43 P.S. § 955(d), prohibits retaliation against an individual because the individual opposed unlawful discriminatory practices or participated in proceedings protected by the Act.

164. Plaintiff engaged in protected activity by repeatedly reporting racial and religious discrimination, harassment, disparate treatment, and unequal working conditions.

165. Defendants were aware of Plaintiff's protected complaints and his opposition to the unlawful employment practices occurring at Beverly Hills Middle School.

166. Following Plaintiff's complaints, Defendants subjected him to continued adverse treatment, including unfavorable assignments, lost work opportunities, heightened scrutiny, and working conditions that contributed to his constructive discharge.

167. Plaintiff alleges that Defendants' retaliatory conduct was causally connected to his protected complaints and opposition to discrimination.

168. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff suffered economic losses, emotional distress, humiliation, and other damages.

169. Plaintiff makes claims for all damages and relief available to him under the PHRA.

**COUNT VII**
**AIDING AND ABETTING DISCRIMINATION**
**UNDER THE PHRA**
*(As against Defendants JOHN PURCELL and WAYNE REMMEY, individually)*

170. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as fully as if set forth at length herein.

171. The PHRA, 43 P.S. § 955(e), prohibits any person or employee from aiding, abetting, inciting, compelling, or coercing the commission of unlawful discriminatory employment practices.

172. At all times material, Defendants Purcell and Remmey exercised supervisory or administrative authority over Plaintiff's working conditions and employment assignments.

173. Defendant Purcell directly participated in discriminatory conduct against Plaintiff, including unequal assignments, degrading treatment, interference with religious practices, and conduct contributing to a hostile working environment.

174. Defendant Remmey was aware of Plaintiff's repeated complaints of racial and religious discrimination and harassment and allegedly participated in or knowingly facilitated the continuation of unlawful employment practices despite his authority to address those complaints.

175. Through their respective actions and omissions, Defendants Purcell and Remmey knowingly aided, abetted, or facilitated the discriminatory employment practices alleged herein.

176. As a direct and proximate result of Defendants Purcell's and Remmey's conduct, Plaintiff suffered economic losses, emotional distress, humiliation, and other damages.

177. Plaintiff makes claims for all damages and relief available to him under the PHRA against Defendants Purcell and Remmey, individually.

**COUNT VIII**

**RACE AND RELIGIOUS DISCRIMINATION UNDER TITLE VII**

*(As against Defendants US MEDICAL STAFFING, LLC and UPPER DARBY SCHOOL DISTRICT)*

178. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as fully as if set forth at length herein.

179. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), prohibits employers from discriminating against individuals with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin.

180. Plaintiff is a Black/African American male and practicing Muslim who was qualified for his position and performed his employment responsibilities satisfactorily.

181. Defendants discriminated against Plaintiff because of his race and religion by subjecting him to disparate treatment, unfavorable assignments, discriminatory restrictions, lost employment opportunities, and unequal working conditions.

182. Plaintiff was treated less favorably than similarly situated white/Caucasian and non-Muslim employees with respect to assignments, workplace privileges, and employment opportunities.

183. Defendants' discriminatory conduct materially affected Plaintiff's terms and conditions of employment and contributed to his constructive discharge.

184. Plaintiff alleges that his race and religion were motivating factors in Defendants' unlawful employment practices.

185. Plaintiff makes claims for all damages and relief available to him under Title VII.

## COUNT IX
## RELIGIOUS DISCRIMINATION AND FAILURE TO ACCOMMODATE UNDER TITLE VII

*(As against Defendants US MEDICAL STAFFING, LLC and UPPER DARBY SCHOOL DISTRICT)*

186. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as fully as if set forth at length herein.

187. Title VII prohibits discrimination on the basis of religion and requires covered employers to reasonably accommodate an employee's sincerely held religious beliefs and practices unless doing so would impose an undue hardship on the conduct of the employer's business.

188. Plaintiff is a practicing Muslim whose sincerely held religious beliefs include observing daily prayer and, on certain occasions, wearing traditional Muslim attire.

189. Plaintiff requested permission to observe his religious prayer obligations during the workday and communicated his religious needs to Defendants.

190. Plaintiff's requested prayer accommodation ordinarily required approximately ten minutes and could have been accommodated without substantially interfering with his employment responsibilities.

191. Defendant Purcell nevertheless informed Plaintiff and another Muslim employee that they were not permitted to pray at work.

192. Plaintiff further alleges that Defendant Purcell repeatedly sent him home early on occasions when Plaintiff wore traditional Muslim attire, claiming that no student assignments were available despite the continued assignment of work to non-Muslim employees.

193. Defendants failed to provide Plaintiff with an effective reasonable accommodation for his religious practices and subjected him to adverse treatment because of his religion.

194. Plaintiff alleges that accommodating his religious practices would not have imposed an undue hardship within the meaning of Title VII.

195. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered lost wages, emotional distress, humiliation, and other damages.

196. Plaintiff makes claims for all damages and relief available to him under Title VII.

**COUNT X**
**HOSTILE WORK ENVIRONMENT UNDER TITLE VII**
*(As against Defendants US MEDICAL STAFFING, LLC and UPPER DARBY SCHOOL DISTRICT)*

197. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as fully as if set forth at length herein.

198. Title VII prohibits workplace harassment based upon race or religion when the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

199. Throughout his employment, Plaintiff was subjected to repeated harassment, intimidation, humiliation, discriminatory assignments, restrictions concerning religious practices, and unequal treatment because of his race and religion.

200. Defendant Purcell routinely spoke to Plaintiff in a degrading manner, subjected him to hostile interactions, and treated him less favorably than similarly situated white/Caucasian and non-Muslim employees.

201. Plaintiff repeatedly reported the harassment to Defendants, thereby placing them on notice of the discriminatory working conditions.

202. Despite their knowledge of Plaintiff's complaints, Defendants failed to take adequate and effective corrective measures to prevent the continuation of the alleged unlawful harassment.

203. The harassment was sufficiently severe or pervasive to create an objectively and subjectively hostile working environment that materially affected Plaintiff's employment.

204. Defendants' conduct ultimately contributed to Plaintiff's constructive discharge.

205. Plaintiff makes claims for all damages and relief available to him under Title VII.

**COUNT XI**
**RETALIATION UNDER TITLE VII**
*(As against Defendants US MEDICAL STAFFING, LLC and UPPER DARBY SCHOOL DISTRICT)*

206. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as fully as if set forth at length herein.

207. Title VII, 42 U.S.C. § 2000e-3(a), prohibits employers from retaliating against employees who oppose unlawful employment practices or participate in protected discrimination proceedings.

208. Plaintiff engaged in protected activity by repeatedly reporting racial and religious discrimination, harassment, disparate treatment, and unequal working conditions to Defendants.

209. Defendants were aware of Plaintiff's protected complaints and his opposition to discriminatory employment practices.

210. Following Plaintiff's complaints, Defendants subjected him to continued adverse treatment, including unfavorable assignments, lost employment opportunities, heightened scrutiny, and working conditions that contributed to his constructive discharge.

211. Plaintiff alleges that Defendants subjected him to materially adverse employment actions because of his protected activity and that such actions would dissuade a reasonable employee from reporting unlawful discrimination.

212. Plaintiff further alleges that, but for his protected complaints and opposition to discrimination, Defendants would not have subjected him to the retaliatory treatment described herein.

213. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff suffered economic losses, emotional distress, humiliation, and other damages.

214. Plaintiff makes claims for all damages and relief available to him under Title VII.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant, in an amount to be determined at the time of trial plus interest, including but not limited to, all emotional distress, back pay, front pay, punitive damages, liquidated damages, statutory damages, attorney’s fees, costs, and disbursements of action; and, for such other relief as the Court deems just and proper.

Dated: October 29, 2026

**FREUNDLICH & LITTMAN, LLC**
*Attorneys for Plaintiff Abdul Coulibaly*

By: *<u>/s/ Nathaniel N. Peckham, Esq.</u>*
Nathaniel N. Peckham, Esquire
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
P: (215) 545-8500
E: *nathaniel@fandllaw.com*